1  Stan S. Mallison (SBN 184191)
   Hector R. Martinez (SBN 206336)
2  Marco A. Palau (SBN 242340)
   MALLISON & MARTINEZ
3  Attorneys at Law
   1939 Harrison Street, Suite 730
4  Oakland, California 94612
   Telephone:    (510) 832-9999
5  Facsimile:    (510) 832-1101
   stanm@themmlawfirm.com
6  hectorm@themmlawfirm.com
   mpalau@themmlawfirm.com
7
   Attorneys for Plaintiffs
8
                  UNITED STATES DISTRICT COURT
9
           EASTERN DIVISION OF CALIFORNIA – FRESNO DIVISION
10

11  SERGIO VEGA, ALFONSO RIVERA, JUAN          Case No. 1:07-cv-00225-DLB
    MORALES, EMILIANO ARMENTA, PEDRO
12  RIOS, AND JOSE NAVA on behalf of           **DECLARATION OF STAN S. MALLISON
    themselves and all others similarly situated,   IN SUPPORT OF MOTION FOR CLASS
13                                             CERTIFICATION**

14              PLAINTIFFS,

15       vs.                                   Date:      June 4, 2010
                                               Time:      9:00 a.m.
16                                             Location:  Courtroom 9

17  WEEKS WHOLESALE ROSE GROWER,
    INC. doing business as "Weeks Wholesale Rose   *Hon. Dennis L. Beck*
    Grower" and "Weeks Roses",
18
                Defendants.
19

20

21

22

23

24

25

26

27

28

1    I, Stan S. Mallison, declare:

2    1.    I am an attorney licensed to practice law in California. I am co-founding partner of

3    the firm Mallison & Martinez, and counsel for Plaintiffs in the above-captioned case.  I am familiar

4    with the litigation in this case and the disputes from which it arises. All statements made herein are

5    on personal knowledge unless otherwise stated. If called as a witness, I would and could

6    competently testify as to matters stated herein.

7    2.    This declaration is filed in support of Plaintiffs' Motion for Class Certification. The

8    structure of the declaration is as follows: Section I describes the qualification of counsel,  Section II

9    the procedural background of the case, and Section III addresses pertinent class certification

10   requirements.

11

12   **Section I—Class Counsel Background**

13       **A.    Firm Description**

14   3.    Mallison & Martinez is a class action law firm with offices in Oakland and

15   Bakersfield, California.  I started this firm in 2005 with Hector Martinez. Mr. Martinez and I have

16   extensive class action and complex litigation experience at: (1) Lerach Coughlin Stoia & Robbins,

17   (2) Milberg, Weiss, Bershad, Hynes, & Lerach, (3) Van Bourg Weinberg Roger & Rosenfeld (the

18   largest union side labor law firm in the country), (4) Carter & Garay (a boutique wage and hour

19   class action law firm), and (5) California Rural Legal Assistance (the largest federal legal services

20   provider to farm-workers in the country).   The firm has an associate, Marco A. Palau, who joined

21   the firm in August 2007 and has developed significant class action experience since.

22   4.    Mallison & Martinez litigates class action wage and hour cases independently, as in

23   this case, or with prominent co-counsel. The firm has three full-time attorneys on staff (Stan

24   Mallison, Hector Martinez and Marco A. Palau), a law graduate and several full time support staff.

25   The firm also employs part-time attorneys, professionals and assistants as needed.   The firm is

26   almost exclusively engaged in wage and hour practice.

27   5.    The firm's primary purpose is to represent the underrepresented, and has made a

28   policy decision to focus on helping low-wage workers pursue the remedies available to them under

California and Federal labor law.  The firm employs a "research model" approach to litigation that is designed to develop a comprehensive factual and technological expertise in each individual case, relying heavily upon technology and investing enormous amounts of time and energy into factual and legal investigation, both in the pre-filing and early stages of litigation.

6.     One particular area of expertise which Mallison & Martinez develops is the extensive use of databases. The firm works closely with experts in researching and litigating wage and hour cases through an analysis of timekeeping, payroll and other employment databases.

7.     Mallison & Martinez's success is exemplified by the following sample of cases the firm is currently litigating and/or has resolved:

    a.  In re: Rhodia Erisa Litigation:   (Southern District of New York).   This is ERISA Class Action on behalf of 3,945 workers of Rhodia, Inc.  Appointed Co-lead Counsel with Robbins Umeda & Fink. (Class settlement approved for $2.4 million).

    b.  Ibañez et al. v. Food Specialists Inc. et al.: (Alameda Superior Court - Complex).  This is a class action wage and hour case on behalf of 950 food service employees of Scott's Seafood Restaurants.  Mallison & Martinez is the class counsel. (Class settlement approved for $1.485 million).

    c.  Korbel Winery: (Eastern District of California). This is a mid-sized wage and hour class action case involving approximately 600 winery workers. Mallison & Martinez has been appointed Class Counsel. (Class settlement approved for $750,000).

    d.  Don Roberto Jewelers:  (Santa Barbara Superior Court). This is a wage and hour class action involving approximately 1400 retail workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement granted final approval for $1.225 million).

    e.  Glenn Block v. eBay, Inc.: (Santa Clara Superior Court). This is a consumer class action case filed on behalf of several numerous eBay consumers who were impacted by eBay's "bid against yourself" policy (co-counsel Lerach Coughlin Stoia Geller Rudman & Robbins).  (Class settlement approved for $2.1 million).

    f.  Benitez et al. v. Wilbur et al.:  (Eastern District of California). This is a class action wage and hour case on behalf of a class of dairy workers who were (1) not paid all wages largely due to being paid a fixed salary without regard to actual hours worked and (2) due to the employer's failure to record time. Mallison & Martinez is sole counsel. ($400,000 settlement granted final approval.)

    g.  ABM California Industries Overtime Cases: (San Francisco Superior Court). This is a large class action wage and hour case on behalf of approximately

35,000 California janitorial workers against ABM Industries Inc. and its subsidiaries. Mallison & Martinez are the originating attorneys and the case is litigated with the firms Weinberg, Roger, and Rosenfeld and Rastegar & Matern.

h.  Doe et al., v. DM Camp & Sons et al.: (Eastern District of California). This is set of six related wage and hour class action cases filed on behalf of approximately 20,000 migrant/seasonal farm-workers who were not paid minimum wages by a group of the largest grape growers in the Central Valley. These cases are co-counseled with various firms, including Weinberg Roger Rosenfeld, Milberg LLP, Kingsly & Kinglsey and McNicholas & McNicholas. Mallison & Martinez is co-lead counsel in these cases and has been appointed co-lead counsel by Judge Ishii in the two larger cases of the group, Giumarra and Sunview.

i.  MAT Landscape:  (San Joaquin Superior Court). This is a mid-sized wage and hour case involving hundreds of Landscape workers. Mallison & Martinez is co-counsel with California Rural Legal Assistance. (Settlement reached.)

j.  La Salsa Overtime Cases:  (Santa Barbara Superior Court).  This is a large wage and hour class action case involving thousands of La Salsa Restaurant workers.  Mallison & Martinez are the originating and sole attorneys. (Class certification granted.)

k.  Vasquez v. Coast Roofing:  (Eastern District of California). This is a mid-sized wage and hour class action case involving hundreds of roofing workers. Mallison & Martinez is the originating and sole counsel appearing in the case. (Class settlement granted final approval).

l.  TBS Couriers:  (Alameda County Superior Court). This is a set of two mid-sized wage and hour class action cases involving hundreds of delivery drivers. Mallison & Martinez is sole counsel in these coordinated actions.

m.  Ontiveros v. Zamora:  (Eastern District of California).  This is a mid-sized wage and hour class action case on behalf of automobile mechanics.  In this case, counsel established two rulings of first impression:  (1) the application of Cal. Labor Code §558 to individual defendants, and (2) the requirement under California Labor law to pay piece rate employees for time spent on non-piece work tasks.

n.  Lara et al. v. Sierra La Verne Country Club:  (Los Angeles Superior Court). This is a mid-sized wage and hour class action on behalf of service workers. Mallison & Martinez is originating counsel and co-counsels the case with Rastegar & Mattern. (Pending final approval of class settlement).

8.    The above references are just a sample of the dozens of class action cases that Mallison & Martinez has filed and in which they are the originating counsel.

MALLISON DECLARATION IN SUPPORT OF CLASS CERTIFICATION – Case No. 1:07-cv-00225

1

2       **B.**     **Attorneys on this Case**

3          9.       I received a BA degree in Philosophy and Political Science from the California

4   Polytechnic University at Pomona, California in 1990, graduating at the top of both departments.  I

5   then earned a Masters in Economics from the University of California at Riverside in 1993,

6   substantially progressing through the Economics Ph.D program, before altering career direction to

7   pursue a degree in law. In 1996 I received my JD from Stanford University, graduating with honors.

8   During law school, I interned with the National Labor Relations Board, both at the Division of

9   Judges as well as at the Washington D.C. Headquarters, working directly under the supervision of

10  Chairman of the NLRB, William B. Gould.  I am a member of the California Employment Lawyers

11  Association ("CELA") and regularly attend employment law wage and hour class action seminars.

12  Since 2005, my practice has been almost entirely devoted to employment litigation, particularly

13  wage and hour class actions.

14         10.      Between 1996 and 1998, I worked for the law firm of Van Bourg, Weinberg Roger

15  and Rosenfeld, the largest union-side labor law firm in the country, primarily in complex labor and

16  employment litigation.

17         11.      From 1998 to 2004 I worked for Milberg Weiss Bershad Hynes & Lerach ("Milberg

18  Weiss") and joined Lerach Coughlin Stoia & Robbins ("Lerach Coughlin") when the Milberg firm

19  divided in 2004. At these firms I did class action litigation, including work on complex and large

20  cases such as: *In Re Enron Securities Litigation* (settlements in excess of seven billion dollars);

21  *Mariana Island Garment-Worker Cases* (a $20 million wage and hour settlement on behalf of

22  20,000 migrant workers on the island of Saipan); *In Re 3Com Securities Class Action* (settlement of

23  $259 million), a Federal Court challenge to the sufficiency of Federal Department of

24  Transportation's NAFTA Truck safety regulations; *In re Pemstar Securities* (settlement of $12

25  million); a Federal Court challenge to President George Bush's Executive Order re: Project Labor

26  Agreements, and dozens of other cases. As a result of my expertise in economics, I spent a

27  considerable amount of time at Milberg Weiss and Lerach Coughlin as a liaison to experts, a role I

28  continue to fill today with Mallison & Martinez.

1

2        12.     I left Lerach Coughlin in February 2005 to start Mallison & Martinez.  Since starting

3   the firm, I have practiced in over 50 wage and hour class action cases.  I have been appointed class

4   counsel in several federal and state cases, including by this Court in *Ibañez et al. v. Food*

5   *Specialists, Inc. et al.*, a similar case involving a class of about 1500 restaurant workers denied rest

6   and meal periods and owed minimum and overtime wages.  In *Ibañez* this Court granted final

7   approval of the class settlement in which no class member objected and only seven employees opted

8   out.  Other notable cases in which I and attorneys from my firm were appointed class counsel

9   include: *Miranda et al. v. Don Roberto Jeweler's, Inc.* (wage and hour class action on behalf of

10  retail sales employees Santa Barbara Superior Court, Jude Staffel); *Benitez et al. v. Wilbur* (on

11  behalf of dairy workers), *Ruiz v. Korbel* (on behalf of winery workers) and *Chavez v. Petrissans* (on

12  behalf of dairy workers) (E.D. Cal., Judge O'Neill); and *In re Rhodia Erisa Securities* (S.D. N.Y.,

13  Judge Batts).

14       13.     Mr. Martinez received his BA degree in Political Science in 1993 from the

15  University of California at Davis.  Mr. Martinez grew up in a socially conscious farm-worker

16  community, an experience that motivated Mr. Martinez to work for the benefit of low-wage

17  workers.  Beginning in the mid-nineties, at the California Institute for Rural Studies, Mr. Martinez

18  conducted extensive research on California's agricultural industry and the substandard

19  environmental, health and working conditions and its impact on farmworkers and their families.

20  Mr. Martinez then attended law school and earned his law degree from the Golden Gate University

21  School of Law in 1998.  During his law studies, he worked as a law clerk with Van Bourg,

22  Weinberg, Roger and Rosenfeld, the largest union-side labor law firm in the country, under the

23  direct supervision of named partner David Rosenfeld.  From 1999 to 2004, Mr. Martinez worked at

24  California Rural Legal Assistance, Inc. ("CRLA"), the largest non-profit law firm dedicated to

25  farm-worker issues in the country.  His work at CLRA included numerous representative private

26  attorneys general actions under California's Unfair Competition Law, Business & Professions Code

27  Sections 17200 *et seq.*, which were brought on behalf of thousands of agricultural employees and

28  the general public.  During his time with CRLA, Mr. Martinez was nominated for and received a

fellowship with the California Wellness Foundation Violence Prevention Initiative for his work with California farm-worker youth.

14.     As a partner of the firm, Mr. Martinez currently litigates several farm and low-wage worker wage and hour class actions. Since starting the firm, Mr. Martinez has litigated in over 50 wage and hour class action cases. Mr. Martinez is a member of the California Employment Lawyers Association ("CELA") and has been devoted throughout his legal career to representing workers in employment litigation, particularly wage and hour representative and class actions. Mr. Martinez has been appointed class counsel in several federal and state cases, including by this Court in *Ibañez et al. v. Food Specialists, Inc. et al.*, and by other courts in *Miranda et al. v. Don Roberto Jeweler's, Inc.* (wage and hour class action on behalf of retail sales employees Santa Barbara Superior Court, Jude Staffel); *Benitez et al. v. Wilbur* (on behalf of dairy workers), *Ruiz v. Korbel* (on behalf of winery workers) and *Chavez v. Petrissans* (on behalf of dairy workers) (E.D. Cal., Judge O'Neill); and *In re Rhodia Erisa Securities* (S.D. N.Y., Judge Batts), among others.

15.     Marco A. Palau has been an associate with Mallison & Martinez since August 2007. He received his JD from Columbia Law School in New York in 2005, and is admitted to practice law in California and New York. Mr. Palau represents low-wage workers in wage and hour and discrimination cases as an associate with Mallison & Martinez. Prior to joining the firm, Mr. Palau was a staff attorney with California Rural Legal Assistance ("CRLA"), where he represented indigent individuals in civil rights matters, including federally subsidized housing and worker's rights issues. Currently Mr. Palau is involved in dozens of wage and hour class actions, including cases involving thousands of workers in the janitorial, restaurant, manufacturing, retail, construction, and agricultural industries. Since joining Mallison & Martinez, Mr. Palau has litigated in the wage and hour class action context almost exclusively. Mr. Palau has been appointed class counsel in several federal and state cases, including by this Court in *Ibañez et al. v. Food Specialists, Inc. et al.*, and by other courts in *Miranda et al. v. Don Roberto Jeweler's, Inc.* (wage and hour class action on behalf of retail sales employees Santa Barbara Superior Court, Jude Staffel); *Benitez et al. v. Wilbur* (on behalf of dairy workers), *Ruiz v. Korbel* (on behalf of winery workers) and *Chavez v. Petrissans* (on behalf of dairy workers) (E.D. Cal., Judge O'Neill); among

MALLISON DECLARATION IN SUPPORT OF CLASS CERTIFICATION – Case No. 1:07-cv-00225

1   others.

2       16.     Mr. Palau served as an Editor of the Columbia Human Rights Law Review and Co-

3   Managing Editor of the *Jailhouse Lawyer's Manual*, which published the first Spanish edition of the

4   *Manual* in 2005 under Mr. Palau's co-management. He earned BS and MBA degrees from

5   California State University in 1997 and 1999, respectively. He was born and raised in Mexico and is

6   fluent in Spanish, the primary language of a majority of the firm's clients.

7   **Section II—Procedural History of the Case**

8           **A.     The Lawsuit**

9       17.     Our firm was retained by Plaintiffs to analyze, investigate and pursue potential wage

10  and hour claims against Defendant Weeks Roses arising from Defendant's employment practices.

11  We entered into a written fee agreement with Plaintiffs and prospective class representatives that

12  calls for our firm advancing the costs of litigation and payment of fees on a contingency basis, with

13  the contingency fee set as a percentage of any fund secured on behalf of the class and approved by

14  the Court.

15      18.     Prior to filing the action, our office engaged in extensive investigation, including

16  review of prospective plaintiffs' employment records, Weeks Roses documents and other legal

17  research.

18      19.     On February 8, 2007, Plaintiffs filed this action on behalf of all of Defendant's

19  current and former non-exempt, hourly employees.  The operative complaint is the September 11,

20  2007 amended complaint, which Defendant has answered.

21          **B.     Class Certification Discovery & Evidence**

22      20.     Over the course of this litigation, the parties have engaged in substantial discovery.

23  Plaintiffs were able to obtain key evidence needed for this motion, including several thousands of

24  pages containing putative class member timekeeping, payroll and contact information.

25      21.     Defendant has propounded written discovery on Plaintiffs and three of the named

26  Plaintiffs have been deposed.

27      22.     Counsel for Plaintiffs have reviewed all documentary evidence produced by

28  Defendant. I have attached to this declaration numerous of the documents produced by Defendants

in response to Plaintiffs' discovery requests in this case. Attached as Exhibit A are examples of employee time sheets (entitled "Time Card") which list the start and stop time of the employees. Notably, these documents show that the majority of the employees started their workday between 5:00 a.m. and 6:30 a.m.

23.    As noted in the declarations filed in this case – all, or almost all, employees took lunch at noon and almost all of these shifts were in excess of 8 hours.  As such, of the above employees in Exhibit A, almost all of the meal periods occurred late – that is occurred more than 5 hours after the beginning of the shift, in violation of the wage order meal provisions.   The examples provided show just some of the multitude of time cards showing a 6:00 a.m. start time.

24.    Defendants also produced Excel Files.  Attached as Exhibit B are bonus related spreadsheets detailing Weeks' performance bonus structure for class members.  The formula demonstrates that the bonus was calculated based upon a preset amount and does not take into account the amount of overtime each employee worked.  It appears that bonus structure was not adjusted for overtime in any of the calculations for any of the employees as overtime is not incorporated into the formula.

25.    There is no question that overtime was actually worked by employees and sometimes recorded by Defendant.  For example, attached as Exhibit C is a sample of Defendant's payroll register recording overtime worked by a sample of employees.

26.    The records also indicate that contrary to California law, their was no compensation paid for rest breaks – that is there was no paid breaks.  This is demonstrated by the time cards attached to this declaration as Exhibit D which document the pay calculation for piece rate employees and demonstrate that no regular pay was made to these employees for their rest breaks. These are just some of the multitude of piece rate time cards in Defendants' production.

27.    Similarly, there is no indication in the documents produced by defendants that Defendants adjusted their piece rate to account for overtime that was worked.  Instead the piece rate appears to be constant based simply upon the number of units produced.

28.    From my review, there is no indication in the records produced by Defendants that any compensation was paid for pre or post shift work.

29.     From my review, there is no indication in the records produced by Defendants that Defendants reimbursed for the expenses complained of in the complaint.

30.     From my review, there is no indication in the records produced by Defendants that Defendants had any procedure in place to adjust their bonus or piece rates to account for overtime.

31.     From my review, I see no indication that defendants are paying meal or rest premiums to employees when they miss rest or meal periods.

**Section III—Class Certification Considerations**

32.     Plaintiffs believe a class action is a superior method of adjudication because it promotes judicial economy and facilitates meaningful access to a means of redress for several hundred workers in this case, thereby avoiding numerous small claims actions and alleviating concerns of retaliation against individual employees by a show of unity.  Indeed, the class action mechanism makes it cost effective and efficient for both the Court and the parties to litigate the numerous claims present in this case. The parties have completed a significant amount of discovery and this Court has conducted multiple status conferences.

33.     Thus far, there have been no problems managing this case as a class action, and the facts of this case lend themselves to class treatment.  Indeed, adjudicating this action on a class basis is appropriate because the common issues for certification stem from Defendant's practices and policies of (1) scheduling the meal period after five hours of work in violation of the applicable wage order and Labor Code § 512; (2) failing to provide rest and meal breaks during which employees are relieved of all duty, but rather requiring employees to sharpen tools during breaks; (3) failing to pay premium rest or meal period wages for the failure to provide rest and meal breaks as described in (1) and (2); (4) failing to provide the necessary tools and equipment to perform the job and thus forcing employees to acquire these items without reimbursement; and (5) not adjusting the bonus or piece rate to account for overtime.

34.     Pursuant to the recent *Arias* decision, discussed at length in the opening brief submitted concurrently herewith, Plaintiffs intend to litigate the PAGA claim on behalf of the workforce to obtain PAGA penalties for employees and the state. Doing so will inevitably require

resolution of the underlying claims for each of Defendant's hundreds of employees. These underlying claims are predicate acts and are exactly the same claims Plaintiffs have asserted generally. Given the potential financial constraints as a result of the downturn in the economy, one consequence of not certifying a class would be to burden Defendant with a multiplicity of claims and a myriad of suits covering the same underlying violations asserted here, because although their claims to PAGA penalties will be adjudicate before this Court whether or not a class is certified, in the event that the class is not certified absent class members will be free to pursue their underlying wages against Defendant because the PAGA claim only binds them with respect to PAGA penalties. This one-way-intervention scenario could needlessly weaken Defendant's financial position in these difficult financial times. In sum, it is efficient for this court to adjudicate these claims in one proceeding, rather than in a series of proceedings. One action can provide the vehicle by which a resolution of all claims can be made that preserves all parties' rights and promotes justice.

35.    The Plaintiffs have suffered injury as a result of Defendant's allegedly unlawful wage and hour policies or practices described in the motion. They have not received all wages earned; they were not provided premium pay for rest or meal periods; they were not provided accurate wage statements due to these compensation issues and the underreporting of time; and they were not reimbursed for necessary job expenses. These and other policies and practices have made it difficult to calculate the actual hours worked and wages earned.

36.    I know of no reason why Plaintiffs Sergio Vega, Alfonso Rivera, Juan Morales, Emiliano Armenta, Pedro Rios, and Jose Nava, who are requested to serve as Class Representatives, cannot serve as such. There are no known antagonistic or conflicting interests between the named Plaintiffs and the class that would render them inadequate representatives.

37.    Plaintiffs Sergio Vega, Alfonso Rivera, Juan Morales, Emiliano Armenta, Pedro Rios, and Jose Nava have taken on their duties as Class Representatives to benefit the interests of the class.  They have assisted with prosecution of this case, assisted counsel in analyzing their own employment documents as well as provided insight into class-wide discovery, and hired competent and seasoned counsel to represent the class. True and correct copies of the proposed class representatives' declarations in support of class certification are attached hereto as Exhibit E.

38.    Attached hereto as Exhibit F are true and correct copies of declarations of  putative class members confirming the violations alleged in the complaint.

39.    Attached hereto as Exhibit G is a true and correct copy of the DSLE Manual Section 49 regarding piece rate, bonus payments, and the proper calculation of overtime.

40.    Attached hereto as Exhibit H is a true and correct copy of a March 6, 1991 DLSE Opinion letter regarding piece rates, bonus payments, and the proper calculation of overtime.

41.    Attached hereto as Exhibit I are a true and correct copy of a February 3, 1994 and May 16, 1998 DLSE Opinion letters regarding compensable time, including donning and doffing.

I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct. Executed this 26th day of April, 2010 at Oakland, California.


_____/s/ Stan Mallison_____
Stan S. Mallison